PLEASANTS (GOYON v.). See Case No. 5,647.

PLEASANTS (WOOD v.). See Case No. 17,901.

---

## Case No. 11,226.

### The PLEASANT VALLEY.

### The SAMUEL ROTAN.

[7 Ben. 72.] [1]

District Court, S. D. New York. Jan., 1874.

COLLISION IN HUDSON RIVER — TUG AND TOW — LIGHTS — STEAM VESSELS CROSSING.

1. The tug S. R., a small tug about sixty feet long, was coming down the Hudson river, towing two canal-boats, one on each side of her, their bows projecting beyond her bow. Her pilot saw a steamboat, the P. V., coming up the river on his port hand, and, when about half a mile off, heading across the river towards him. He kept on his course till the P. V. was but a short distance from him, when she headed more across his bows. He then blew a whistle and rang the bells to stop and back his boat, but, before it could be done, the P. V. ran into the tow, striking the canal-boat which was on the port side of the tug, on her port side, and sinking her almost instantly, and also striking the other canal-boat so violent a blow that she also sank soon after. The owner of the two canal-boats filed a libel against the tug and the steamboat, charging that both vessels were in fault, the P. V. in that

---

[1] [Reported by Robert D. Benedict. Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

she had no proper lookout, and did not see the tug and tow as soon as she should, and improperly changed her course, and did not stop and back in time; and the S. R. in that she did not stop and back in time, and did not give any signal to the P. V. till the vessels were close together. The answer of the tug alleged no fault in the canal-boats, but claimed that the P. V. alone was in fault, alleging against her the faults charged in the libel, and also that her pilot was incompetent. The answer of the steamboat alleged that the collision was due to fault in the tug and tow, in that they had no lights set, although it was then very dark, so dark that the pilot of the P. V. was unable to see the tow till it was near, and then, from seeing no lights, supposed it was a tow going from him, and could not discover that the tow was coming towards him, till the collision was inevitable, when he rang his bells to stop and back, which was all he could do. Neither steamboat, nor tug, nor canal-boats had any lights set, and as to the time of the collision and the darkness of the hour, which was not, however, far from sunset, there was a great conflict of evidence. *Held*, that, on the evidence, the pilot of the P. V. was not incompetent or inattentive.

2. On the evidence, when the collision took place, it was already so dark that the pilot of the P. V., looking down upon the water, was unable to see the tug and tow sooner than he did, and was misled, by the absence of the lights on the tug, into the supposition that they were going away from him instead of coming towards him.

3. The tug was in fault in not having lights set, as required by law, either on herself, or on either of the canal-boats.

4. The P. V. could take advantage of the fact of negligence on the part of the tug in not showing lights, as a defence on her own part, although such negligence was not set up in the libel.

5. The pilot of the tug was in fault in not sooner signalling the P. V., to give her notice of the presence of the tow by his whistle, in the absence of lights.

6. The change of course of the P. V. by starboarding, if made before her pilot was aware of the presence of the tow, was not such a change of course as is forbidden by the rules for avoiding collisions; and, if made after such discovery, was made in extremis, under the apprehension caused by the sudden near approach of the tug, for which the latter was liable, by reason of her having no lights and giving no signal.

7. The absence of a lookout on the P. V. outside of her pilot-house, was not a fault contributing to the collision.

8. Neither the thirteenth nor the fourteenth rules for avoiding collisions were applicable to the course of the P. V.

9. The tug was in fault in not having lights, in not sooner signalling the P. V., and in not sooner stopping and backing.

10. The libellants were entitled to a decree against the tug alone, and the libel against the P. V. must be dismissed.

In admiralty.

R. D. Benedict, for libellants.

C. Van Santvoord and W. J. Haskett, for the Pleasant Valley.

W. R. Beebe, for the Samuel Rotan.

BLATCHFORD, District Judge. The libellants, the Philadelphia and Reading Railroad Company, as owners of the canal-boats Samuel Lawrence and Charlotte Nesbit, bring suit against the steamboat Pleasant Valley and the steamtug Samuel Rotan, to recover for the damages sustained by the sinking of said canal-boats, by a collision which took place between them and the Pleasant Valley on the 12th of June, 1872, in the Hudson river, off the city of New York, the canal-boats being at the time in tow of the tug, the Lawrence lashed to her starboard side, and the Nesbit to her port side. The canal-boats were laden with cargoes of iron ore in bulk, and were on a trip from Piermont to Hoboken. The Pleasant Valley was on a trip from New York to Fort Lee. The bows of the canal-boats projected beyond the bow of the tug.

The libel alleges, that, when the tow had reached a point about opposite Fifty-Third street in the city of New York, the Pleasant Valley was observed coming up the river, well over on the New York side; that, shortly afterwards, she, improperly, and without warning, changed her course, and attempted to cross the course of the tug and her tow, and, in making such attempt, ran into the canal-boats, causing them to sink almost immediately, with their cargoes, and to become a total loss; that, though the approach of the Pleasant Valley in such a direction as to indicate danger of a collision, was seen by those in charge of the tug from the time when the Pleasant Valley was distant half a mile or more, yet no whistle or signal whatever was given to the Pleasant Valley by the pilot of the tug until the Pleasant Valley had approached within about 500 feet; that the collision happened in about the middle of the river; that it was daylight, and the tide was running ebb; that the canal-boats were plainly visible for a long distance; and that the collision was caused by the carelessness of those navigating the Pleasant Valley, in that she had no proper lookout performing his duties, that she improperly changed her course, and that she did not stop and back in time to avoid the collision, and by the carelessness of those navigating the tug, in that she had no proper lookout performing his duties, that she did not stop and back in time to prevent the collision, and that she failed to give any whistle or signal to the Pleasant Valley until the latter was within about 500 feet.

The answer of the tug alleges, that, at a little before sundown, and while it was broad daylight, the tug with her tow had reached a point about the middle of the river and above Fifty-Third street, the tide being ebb, when the Pleasant Valley left the foot of Thirty-Fourth street on the New York side; that her usual course would have carried her on the port side of, and far under the stern of, the tug and tow; that, as she neared the tug and tow, she had changed her course so as to run directly at the tug and tow; that, upon perceiving this, the pilot of the tug blew one whistle, to which no reply was made by the Pleasant Valley; that, after waiting a short time for a reply, and at the same time seeing

that the Pleasant Valley was drawing more directly across the bows of the tug and tow, the engine of the tug was promptly stopped and backed, but the Pleasant Valley kept on, only stopping her engine as she was about striking, and came in contact with the Nesbit on the starboard side of the Pleasant Valley, striking the stem of the Nesbit a violent blow as she was crossing, and carrying the tug and tow around to starboard, and, the Pleasant Valley being still on the swing to a course more directly across the river, the stem of the Lawrence came into contact with the starboard side of the Pleasant Valley, and the two canal-boats were so injured that they sank in deep water in a few minutes; that the pilot of the Pleasant Valley was a man of dissipated habits, unfit to be trusted as pilot, and was, at the time of the collision, more or less under the influence of liquor, and so much so, that, although it was broad daylight, he mistook the direction in which the tug and tow were going, and supposed he was attempting to cross the stern when he was in fact attempting to cross the bows; that the Pleasant Valley was without a lookout; that the collision was wholly the fault of those navigating the Pleasant Valley, in having at the wheel an incompetent and unfit person, in having no lookout, in not keeping to the right, in attempting to cross the bows of the tug and tow, in not stopping and backing in time, in not answering the signals of the tug, and in paying such little attention as not to see which way the tug, with her tow, was bound; and that, before the collision, having the tug, with her tow, upon her starboard hand, it was the duty of the Pleasant Valley, under the act of congress, to avoid the tug and her tow.

The answer of the Pleasant Valley alleges that the Pleasant Valley, from about off Thirty-Fourth street, was on a course up the river, heading for Bull's Ferry, gradually hauling across, and made no change from that course, until the discovery, on a close approach to her, within five hundred feet off or thereabouts, of the tug and her tow, right ahead and higher up the river, then first discernible from the Pleasant Valley, in the darkness ahead in the direction in which the Pleasant Valley was moving, and then only discernible in the darkness as a dark mass, without any lights, or shape of hull or sail, when, from an impression produced by the absence of such lights, that such mass, if moving, was moving up the river, the helm of the Pleasant Valley was put to starboard, to clear it, which was followed, after only a momentary necessary interval for observation by the immediate ringing of the bells on the Pleasant Valley, to slow, stop and back, in quick succession, and these bells were at once obeyed, and the way of the Pleasant Valley was stopped by the shore when the collision occurred, the stem of the canal-boat on the port side of the tug striking against the Pleasant Valley on her starboard bow aft

her stem; that the canal-boats could not have been seen by any lookout on the Pleasant Valley sooner than they were seen by her pilot, or until they were too close for the Pleasant Valley to avoid a collision by proper vigilance or the use of ordinary and reasonable and due care and skill; that it was not daylight; that the collision was not caused by any fault of those navigating the Pleasant Valley, either in not having a proper lookout performing his duty, or through any improper change of course, or by reason of her not stopping and backing in time to avoid the collision, the same having been done as soon as any necessity therefor was discoverable, in the emergency produced by the fault of the tug and tow; that the collision was caused by the tug and the tow, they and each of them, in not exhibiting the usual and proper lights, or as required by the acts of congress in that behalf, and the ninth of the rules thereunder, of the supervising inspectors, of the Revision of June 10, 1871, or any lights, and by the neglect of the pilot of the tug, observing the approach of the Pleasant Valley, conspicuous to him by her whiteness, or other indications of her course and movement, under circumstances calculated to raise a doubt, and raising a doubt, as to the course and intention of the Pleasant Valley, in reference to passing the tug and tow, in not immediately signifying the same by giving several short and rapid blasts of the steam-whistle, and, upon the approach within half a mile, immediately slowing to a speed barely sufficient for steerage way, until the proper signals were given answered and understood, or until the vessels should have passed each other, as required by rule 3 of the rules for the government of pilots in that behalf, and the exercise of proper seamanship, and by the tug's not having a proper lookout performing his duty, and not stopping and backing in time to prevent the collision, and not keeping well to the west of the middle of the river, according to the custom of river navigation; that the pilot of the Pleasant Valley started with her, on her voyage to her destination, from the foot of Spring street, at about or near 8 o'clock, which was about half an hour after sunset; that previously thereto, a violent storm prevailed, accompanied by rain and darkness, and, although the rain and wind had partially subsided, the weather was very cloudy, the night was dark, and the obscuration, greater in the direction in which the Pleasant Valley was moving, was such as to render the tug, flanked by the boats, and the boats, of a color not distinguishable from the surrounding atmosphere, without any lights, or any sail, or other indication of their presence as boats, until too close to enable the Pleasant Valley, by the exercise of proper vigilance, or ordinary and reasonable care, to do what might be necessary to avoid the collision; that, when the Pleasant Valley was heading her proper course to her desti-

nation, and her pilot discovered the tow as a dark object on the waters, as it presented no lights, he had every reason to believe that the vessel, if moving, was going up the river, and immediately, after only a momentary delay for observation, rang to stop and reverse, and the engineer obeyed the orders, and, at the time of the collision, the Pleasant Valley was dead, or nearly dead, in the water; and that the collision happened without any omission or fault chargeable to the Pleasant Valley, as contributing to, or conducing to produce, the collision.

This case presents, in the evidence, the usual feature which attends the trial of a libel by an injured tow against her tug and a third vessel, for a collision between such tow and such third vessel—a reduction of the trial to a contest between the tug and the third vessel, and to an attempt by each to throw the whole blame on the other. This case, too, presents a feature often attendant on the trial of collision cases—a tendency on the part of the witnesses for both sides to exaggerate in respect to points supposed to be vital and controlling. The exaggeration, in the present case, is as to the degree of remaining daylight or approaching darkness, at the time of the collision. The witnesses for the Pleasant Valley testify to great darkness; those on the other side to abundant daylight. Manifestly, both sets of witnesses exaggerate.

The answer of the tug and the answer of the Pleasant Valley substantially agree in one important particular, namely, that the pilot of the Pleasant Valley mistook the direction in which the tug and her tow were moving. The answer of the tug avers, that the pilot of the Pleasant Valley mistook the direction in which the tug and tow were going, and supposed he was attempting to cross the stern, when in fact he was attempting to cross the bows, and that, when the Pleasant Valley was not far off, she drew more directly across the bows of the tug and tow. The answer of the Pleasant Valley alleges that her pilot did not discover the tug and tow until they and the Pleasant Valley had approached within about five hundred feet of each other, and then saw them, in the darkness ahead, only as a dark mass, which produced the impression, that, if moving, it was moving up the river, because it had no lights, or shape of hull or sail, and that thereupon the helm of the Pleasant Valley was put to starboard, to clear it. These concurrent statements of the two answers, that the Pleasant Valley in fact mistook the direction in which the tug and tow were moving, and starboarded just before the collision, to pass under the supposed stern of the tug and tow, are supported by the evidence on both sides. It is true, that the answer of the tug attributes the mistake on the part of the pilot of the Pleasant Valley to his being, at the time, under the influence of liquor, so that, although it was broad daylight, he paid so little attention as not to see which way the tug and tow were bound. But the fact of the mistake and the movement it induced on the part of the Pleasant Valley are averred and established. On the supposition that the object seen from the Pleasant Valley was a vessel moving up the river, in the same direction that the Pleasant Valley was going, the starboarding by the Pleasant Valley, on the discovery of such object, was an intelligent movement, indicating that the pilot was in possession of his faculties, and was not under any disability. Nor is there any evidence that he was under the influence of liquor at the time. The evidence all points the other way. The pilot was dead at the time of the trial, but all the evidence we have in regard to his acts and conversation, at the wheel, in the pilot-house, just before the collision, indicate a man who knew what he has doing and was attentive to his duties. His conversation with Johnson, his sounding the gong twice to have the lights put up, his starboarding on seeing what he supposed was a vessel moving up the river, and his slowing, stopping and backing on discovering his mistake, are such indications. If, then, the mistake which the pilot of the Pleasant Valley made was not due to any blunting of his faculties by liquor, to what was it due?

The proposition urged, in this respect, against the Pleasant Valley is, that, although it was broad daylight, the pilot of the Pleasant Valley failed sooner to see the tug and tow, and failed, when he did discover them, to see at once that they were moving towards him, because he was inattentive to his duties. This involves, necessarily, the idea, that the pilot, in broad daylight, failed to see the tug and tow at all, although they were ahead of him, in the middle of a broad river, with no obstruction, and no other vessels in the vicinity, and plainly visible, until they arrived within a short distance of him, and that, when he discovered them, he failed, in broad daylight, to see that they were moving towards him, and not from him. The presumption is against such a state of facts. The conclusion drawn rests entirely on the premise that it was daylight, or, as the answer of the tug alleges, "broad daylight," or, in other words, that sufficient daylight remained for the pilot of the Pleasant Valley to have sooner seen the tug and tow, and to have seen, when he did discover them, that they were moving towards him, and not away from him, if he had been vigilant and attentive. There can be no doubt that the persons on the tug and the canal-boats saw the Pleasant Valley approaching when she was a long distance off. But the Pleasant Valley was a large side-wheel steamboat, painted white. She was conspicuous, and, seen from low canal-boats, and a low tug, she, doubtless, stood out in relief against the sky, and what light there was in it. The tug was a small vessel, of 40 or 50 tons, and about 50 feet long. The canal-boats projected

ahead of her, on each side. They were of a dark color, and no visible part of the tug was lighter than a drab color. From the elevation of the pilot house of the Pleasant Valley, the background to the tug and tow was the water of the river. Under these circumstances, there is nothing improbable in the view, that those on the tug and the tow may have seen, with sufficient distinctness, the approach of the Pleasant Valley, while the pilot of the Pleasant Valley may not have been able, even by proper attention and vigilance, to see the tug and tow till he was close upon them, and, even then, not to discern, at first, which way they were moving. It depends on the degree of fading daylight or coming darkness. As to this, a most significant circumstance is the fact that the pilot of the Pleasant Valley twice signalled by the deck gong, from the pilot house, each time by a signal of two strokes, to have the vessel's lights put up. She had no lights set. The engineer heard the first signal and saw that it was not obeyed, and that no one went to put up the lights, and thinking, from the degree of darkness, that it was dangerous to run without lights, shut off the steam, of his own suggestion, to about one quarter speed, and then heard the second signal. At this time, on the weight of the evidence, it was about half an hour after sunset. It is not to be believed, that the pilot would have rung, and rung twice, for the lights to be put up, so that his vessel might be seen, if he had not been impressed with the conviction, resulting from the then actual use of his eyesight, that the daylight had so far receded, and the darkness had so far advanced, that he could not see, in the direction in which his vessel was moving, with sufficient distinctness to enable him properly to avoid a vessel without lights which might be approaching from that direction. The shutting off of the steam by the engineer is of kindred significance as to the absence of light and the presence of darkness. I am satisfied, on the evidence, that it was so dark, that the pilot of the Pleasant Valley failed sooner to see the tug and tow, because the tug did not have set any lights, and did not show any light, and that to the same cause is attributable the mistake the pilot made as to the direction in which the discovered object was moving. His own view of the necessity for lights, manifested by his call for them on his own vessel, naturally led him to expect that any vessel coming towards him from ahead would show a light, and to conclude that a vessel seen ahead, in that part of the river, and not showing a light, was moving away from him. From these considerations, it results, that the tug was in fault in not having set and burning the lights required by statute, whether as required by article 4 of the act of April 29, 1864 (13 Stat. 59), or by section 47 of the act of February 28, 1871 (16 Stat. 453, 454), and in not showing any light, either on herself or on either of the boats

she was towing, and that such fault directly contributed to the collision.

The libel does not allege the absence of lights on the tug as a fault on the part of the tug. It specifies, as faults in the tug, only these, that she had no proper lookout performing his duties, that she did not stop and back in time to prevent the collision, and that she failed to give any whistle or signal to the Pleasant Valley until the latter was within about 500 feet. The theory of the libel is, that it was daylight, and that the canal-boats were plainly visible for a long distance. It states no facts which make out a necessity for lights on the tug. It claims that the canal-boats could have been seen if the Pleasant Valley had had a proper lookout performing his duties. Yet it claims, also, that the tug was in fault because she gave no whistle or signal to the Pleasant Valley until the latter was within about 500 feet, whereas she should have given such whistle or signal at a greater distance off, because she saw the Pleasant Valley half a mile or more off, approaching in such a direction as to indicate danger of collision. This must be regarded as being, in substance, an allegation, that the tug had reason, from the course of the Pleasant Valley, to suppose that the Pleasant Valley did not see the tug and her tow, and that, therefore, it was the duty of the tug to indicate her presence by whistling or otherwise signalling, and that her not doing so was a fault contributing to the collision.

Although the libel does not charge the absence of lights from the tug as a fault making the tug responsible to the libellants, yet the Pleasant Valley, in exoneration of the faults charged against herself by the libel, whether with a view to entire exoneration or to partial exoneration, has a right to show that the absence of lights from the tug was a cause, or the cause, of things charged by the libel as faults in the Pleasant Valley, namely, her alleged change of course and her alleged attempt to cross the course of the tug and tow. If, in showing this, she shows that such absence of lights from the tug contributed to the collision, that conclusion must, as against the tug, between her and the Pleasant Valley, be dealt with as a proper element in the case, inasmuch as the answer of the Pleasant Valley insists upon such absence of lights as a fault in the tug. Whether, if such absence of lights from the tug were the only fault in the tug that contributed to the collision, it could, when not alleged or insisted on in the libel, be allowed to operate to give a decree to the libellants against the tug, is an important question, and one not necessary to be here decided, inasmuch as there were other faults in the tug, contributing to the collision, which are alleged in the libel.

The allegations of the libel, that the tug saw, from the distance off of half a mile or more, the approach of the Pleasant Valley

in such a direction as to indicate danger of a collision, and that the tug gave no whistle or signal to the Pleasant Valley until the Pleasant Valley had approached within about 500 feet, and that the collision was due in part to carelessness on the part of the tug, in not stopping and backing in time to prevent the collision, and in not giving any whistle or signal to the Pleasant Valley until the latter was within about 500 feet, are borne out by the evidence. The pilot of the tug says, that, when he first saw the Pleasant Valley, she was about two miles off; that, from about off Forty-Second street she steered directly for the tug and tow; and that he gave no signal, but kept on until the Pleasant Valley was about 10 lengths or less off, when he gave one whistle, and then slowed, stopped and backed. Having no lights, and seeing the Pleasant Valley heading directly for the tug and tow, it was the duty of the tug to indicate her presence by whistles or other signals, as there was reasonable ground for the belief that the Pleasant Valley did not see the tug and tow, either from the darkness, or from inattention, and it was equally her duty to have stopped and backed sooner than she did. Confessedly, from about off Forty-Second street, the Pleasant Valley headed directly for the tug and tow, and did not change from that course, except to draw more across the course of the tug and tow, and the tug saw this, and saw that she and the Pleasant Valley were approaching each other so as to involve risk of collision. It was, therefore, under article 16 of the statutory rules (Act April 29, 1864; 13 Stat. 61), the duty of the tug to slacken her speed, and, if necessary, to stop and reverse. The latter necessity, as it turned out, existed, but the tug neglected such duty, until too late a period.

The failure of the tug to indicate her presence sooner by whistles or signals, was the neglect of such a precaution as is referred to in article 20 of the statutory rules. I do not characterize it as a failure to comply with rule 3 of the rules for the government of pilots, referred to in the answer of the Pleasant Valley. Nor must I be understood as characterizing the failure of the tug to show lights, either on herself or her tow, as a failure to comply with rule 9 of the rules of the supervising inspectors, of June 10, 1871, so far as those rules require anything different from, or in addition to, what is required, in respect to lights for steamtugs, by article 4 of the statutory rules, in the act of April 29, 1864.

Was the Pleasant Valley in fault? The libel alleges, as a fault in her, contributing to the collision, that she had no proper lookout, performing his duties. The fact that she had no lookout stationed at her bow is conceded. But the answer of the Pleasant Valley avers, that the canal-boats could not have been seen by any lookout on the Pleasant Valley sooner than they were seen by her pilot, or until they were too close for the Pleasant Valley to avoid a collision by proper vigilance, or the use of ordinary and reasonable and due care and skill. There was no one on the lookout, on the main deck, forward, on the Pleasant Valley, in the place where a lookout ought to have been stationed. The master and the deck hands were all of them aft, on the saloon deck, washing the deck. There was no one looking ahead but the pilot in the pilot house. He recognized the necessity for lights by twice sounding the gong for them, and this practical acknowledgment by him, that the darkness was such that he could not see, with distinctness, vessels which might not have lights, made it the more incumbent upon him to take care that he had a lookout stationed in the proper place for a lookout, to see if he might not be meeting, as it turned out he was meeting, a vessel without lights. Failing to have such a lookout, it is for the Pleasant Valley to show, that, if she had had such a lookout, the tug and tow would not have been seen by him sooner than they were seen by the pilot, and sufficiently sooner to have enabled the Pleasant Valley to avoid or mitigate the collision. It is difficult to prove a negative; but the views which have led me to the conclusion, that the absence of lights from the tug contributed to the collision, lead me also to the conclusion, that, with the conjoined speed with which the two vessels were approaching each other, no lookout at the bow of the Pleasant Valley would have seen the tug and tow so much, if any, sooner than the pilot saw them, or would, when he saw them, have seen that they were coming towards the Pleasant Valley, so much, if any, sooner than her pilot saw that, as to have made, with any reasonable promptness of action, any difference in the result. If the starboarding of the Pleasant Valley, on discovering the object ahead, was a mistake, and if porting would have been better, the error, induced directly by the want of lights on the tug, and committed in extremis, was not a culpable one, and must be held to be one for which the tug, and not the Pleasant Valley, was responsible.

The allegation, in the libel, that the Pleasant Valley was in fault, in improperly changing her course, so far as it relates to any change of heading by the Pleasant Valley before she discovered the tug and tow, relates to what cannot be called a change of course, because it was a change of heading made in ignorance of the presence of the tug and tow—an ignorance for which, as has been shown, the Pleasant Valley was not to blame. So far as such allegation relates to any change of course by the Pleasant Valley after she discovered the tug and tow, it was, as before remarked, a change in extremis, and not a culpable one.

The averment, in the libel, that the Pleasant Valley was in fault, in not stopping and backing in time to avoid the collision, is dis-

posed of by the observations already made. She stopped and backed as soon as she discovered danger of collision, and that the objects ahead were approaching vessels, and as soon as, under the circumstances, she was required to do so, and such discovery was made as soon as, with the want of lights on the tug, it could have been made.

The views already presented cover nearly all the allegations of fault made against the Pleasant Valley in the answer of the tug—the incompetency and unfitness of the pilot of the Pleasant Valley, her want of a lookout, her attempt to cross the bows of the tug and tow, her not stopping and backing in time, and her failing, through inattention, to see which way the tug and tow were bound.

The answer of the tug avers that the Pleasant Valley was in fault, in not keeping to the right. This is an invocation of the rule of porting, laid down in article 13, when two steam vessels are meeting end on, or nearly end on, so as to involve risk of collision. I do not think this article has any application to the Pleasant Valley, under the circumstances of this case. She was under no obligation to port before she discovered the tug and tow, and her failure to port on or after such discovery was no fault. Nor did the fourteenth article apply to the Pleasant Valley, and require her, as having the tug and tow on her own starboard side, to keep out of their way. Nor was there any fault in the Pleasant Valley in not answering the whistle from the tug given, when such whistle was given, at a time when, from the evidence, a collision was inevitable.

The answer of the tug does not allege any fault on the part of the canal-boats. It is unnecessary to consider the allegation, in the answer of the Pleasant Valley, that the collision was caused by the canal-boats, in their not exhibiting the usual and proper lights, or to determine whether it was the duty of those owning or on board of the canal-boats, under the provisions of the forty-seventh section of the act of February 28, 1871 (16 Stat. 453, 454), or under the ninth of the rules of the supervising inspectors, of June 10, 1871, for the government of pilots, to exhibit or carry any lights, or to determine whether the provisions of the said ninth rule are regulations which the supervising inspectors were authorized to make by the twenty-third or the twenty-ninth section of the said act of February 28, 1871.

The libel as against the Pleasant Valley must be dismissed, with costs, and the libellants must have a decree against the tug, with costs, with a reference to ascertain the damages set forth in the libel.